UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EVELYN KELLY,

    Plaintiff,    Civil Action No. 04-72865

v.    HON.  GERALD E. ROSEN
U.S. District Judge
HON. R.  STEVEN WHALEN
COMMISSIONER OF SOCIAL    U.S. Magistrate Judge
SECURITY,

    Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Evelyn Kelly brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying her application for disability Insurance Benefits (DIB) under Title II of the Social Security Act.  Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  I recommend that Defendant's Motion for Summary Judgment be granted, and Plaintiff's Motion for Summary Judgment denied.

## PROCEDURAL HISTORY

On April 17, 2001, Plaintiff filed an application for DIB alleging an onset of disability date of August 11, 2000 (Tr. 44-46).  After denial of her  claim initially, Plaintiff filed a request for an administrative hearing, conducted on June 3, 2003 in Flint, Michigan before Administrative Law Judge (ALJ) Regina Sobrino (Tr. 291-323).  Plaintiff, represented by

Mikel Lupisella, testified (Tr. 294-313), as did Mary Williams, acting as Vocational Expert (VE)(Tr. 313-321). ALJ Sobrino found that although Plaintiff could not perform her past relevant work, she could perform a significant number of jobs in the regional and national economy (Tr. 22). On May 28, 2004 the Appeals Council denied Plaintiff's request for review (Tr. 4-6). Plaintiff filed for judicial review of the final decision on July 29, 2004

## BACKGROUND FACTS

Plaintiff, born July 1, 1956 was age forty-seven when the ALJ issued her decision (Tr. 23, 44). She completed high school and two and a half years training in electrical work (Tr. 18). She worked previously as a electrician for General Motors (Tr. 18, 100). Plaintiff alleges an onset date of August 11, 2000 due multiple joint pain (Tr. 18).

### A.     Plaintiff's Testimony

Plaintiff testified that she lived in a two story house in Mount Morris, Michigan with her husband and two children, aged eighteen and eight (Tr. 294-295). She reported that after finishing high school, she received two and a half years training as a journeyman electrician (Tr. 295).

Plaintiff indicated that she had not worked since the onset of disability on August 11, 2000 (Tr. 296). She stated that prior to her onset date she was already working with "restrictions" which limited her need to walk, stand, lift, bend, and kneel (Tr. 296). She related that on the day of her onset that back pain prevented her from beginning work (Tr. 296). She indicated that prior to August, 2000 that her restrictions gave her a sit/stand option and limited her lifting to ten pounds (Tr. 297). She reported that she could not stand

for more than twenty minutes before experiencing intense back pain (Tr. 297). She stated that if she was required to walk for twenty to thirty minutes she required a left knee brace (Tr. 297). She indicated that she had undergone knee surgery, adding that x-rays showed "no cartilage" on her left knee (Tr. 298). She also alleged difficulty sitting, estimating that she could not sit for more than twenty minutes due to pressure on her back (Tr. 298).

Plaintiff stated that she performed kitchen work by supporting herself by leaning against a counter (Tr. 299). She testified that she experienced burning pain in her wrists resulting from Carpal Tunnel Syndrome along with back pain (Tr. 299). She indicated that the heaviest object she could lift was a gallon of milk, adding that she needed to use both hands (Tr. 299). She complained that her hands "stiffened up" with overuse (Tr. 299).

Plaintiff reported that she relieved her wrist pain by taking medication (Tr. 300). She testified that she soaked in a hot tub several times a week to loosen her muscles (Tr. 300). She denied having trouble reaching, but stated that she experienced difficulty bending (Tr. 300). She reported that she was obliged to hold onto a handrail when climbing or descending stairs (Tr. 301). She denied vacuuming or yard work, stating that her family helped her perform those and other chores (Tr. 301). She stated that she drove her children to various activities and grocery shopped regularly (Tr. 301-302). She reported that she sewed occasionally (Tr. 301). She indicated that she and her family socialized and that she attended her children's sporting events and recitals (Tr. 303).

Plaintiff stated that she took Motrin, Neurontin, and used Lidoderm patches on her lower back (Tr. 304). She stated that Flexall had been prescribed, but that she only took it

on an as needed basis at night (Tr. 304). She reported that she declined to take it during the day because it made her drowsy (Tr. 304). She reported side effects from the Motrin, stating that it made her dizzy (Tr. 305-306). She stated that recently, her pain had intensified, obliging her to use a Med-Pack (Tr. 306). She indicated that she sought emergency room treatment on one occasion after her knee swelled (Tr. 307). She indicated that currently used braces on both knees (Tr. 308).

Plaintiff stated that she slept fitfully, waking up at least once during the night (Tr. 310). She estimated that she napped during the day twice a week (Tr. 310). She stated that her best positions were either sitting leaning forward or lying down with a pillow under her left knee (Tr. 311).

### B. Medical Evidence

A February 1999 EMG recommended by Plaintiff's treating physician, Mohamed Abuharaz, M.D., showed "mildly abnormal" results, including "evidence of L5 root irritation bilaterally which could be consistent with bulging disk or central disk herniation" (Tr. 248).

In July, 1999, Plaintiff sought treatment for a head injury received at work (Tr. 244). Plaintiff denied losing consciousness and appeared stable upon examination (Tr. 244). Notes from subsequent exams indicate that Plaintiff experienced renewed back pain (Tr. 243). Plaintiff reported that chiropractic treatment did not improve her condition, but that she experienced some relief from exercise and soaking in a hot tub (Tr. 240). Notes from a November, 1999 exam indicate that a followup MRI showed no evidence of disc herniation or nerve compression (Tr. 238). Dr. Abuharaz prescribed Robaxin for muscle spasms and

advised that Plaintiff continue physical therapy (Tr. 238).

In January, 2000 Dr. Abuharaz noted that epidural injections had improved Plaintiff's muscle spasms (Tr. 235). Plaintiff reported that she had sustained injuries at work, but appeared in no acute distress (Tr. 235). Dr. Abuharaz reported that her gait was normal (Tr. 235).

In August, 2000 Plaintiff reported recurring back pain (Tr. 233). Plaintiff told Dr. Abuharaz that she would like to try osteopathic manipulative therapy (Tr. 233). Plaintiff received a prescription for Darvocet 100 (Tr. 233). Notes from an appointment later the same month indicate that Plaintiff complained of severe lower back pain, reporting that her leg spasms had caused her to fall the day before (Tr. 232). In October, 2000 John Kohn, D.O., administered epidural injections (Tr. 149). Plaintiff tolerated the procedure well, reporting that she also experienced "some relief" from osteopathic manipulation (Tr. 149).

Also in October, 2000, independent medical examiner Robert Gordon, D.O., reported that Plaintiff appeared to experience "possible radicular type symptoms in the right low back" (Tr. 164) He recommended that Plaintiff stay off work one month before a re-evaluation (Tr. 164). The next month, Harriet Squier, M.D., observed that "[b]ecause [Plaintiff's] pain syndrome interferes with her ability to do basic activities such as walking, sitting, lifting, and transferring, she is unable to perform her usual work, " and placed Plaintiff on work restrictions for two months (Tr. 155).

In January, 2001 neurologist Vivekanand Palavali, M.D., recorded that Plaintiff's most recent MRI showed "L4-L5 stenosis and moderate and mild L3-L4 stenosis." Dr

Palavali recommended that Plaintiff undergo physical therapy before pursuing more aggressive options (Tr. 214). In February, 2001, Plaintiff sought emergency treatment for left leg swelling (Tr. 226). Plaintiff received Vicodin and her left knee was aspirated (Tr. 226). Dr. Abuharaz prescribed Prednisone to reduce leg swelling at a followup appointment (Tr. 226). In April, 2001 neurologist Wilbur Boike, M.D., conducted an independent examination of Plaintiff, finding that although Plaintiff's left knee was obviously swollen, there was "no objective clinical evidence of either neurological or spinal impairment or disability" (Tr. 195). He concluded that Plaintiff could return to "normal and unrestricted work" (Tr. 195).

In May, 2001, Plaintiff reported to an associate of Dr. Abuharaz that she experienced trouble walking due to knee swelling (Tr. 233). In June, 2001 Stephen Burton, M.D., orthopedist, recommended arthroscopic surgery to alleviate degenerative arthritis in left knee (Tr. 211).

In July, 2001 B.D. Choi, M.D., performed a Physical Residual Functional Capacity Assessment, finding that Plaintiff could perform light work with postural limitations on climbing, stooping, kneeling, crouching, and crawling (Tr. 199). Dr. Choi concluded that although Plaintiff had a medically determinable impairment, her medical records did not substantiate her alleged degree of pain (Tr. 203).

After the August 6, 2001 knee surgery, Plaintiff told Dr. Burton that she was "making good progress" (Tr. 210). However, Dr. Burton reported in October, 2001 that Plaintiff reported "a fair amount of discomfort" (Tr. 209). He noted that Plaintiff had enrolled in a

"vigorous physical therapy program" (Tr. 209).

In November, 2001 Dr. Burton prescribed a knee brace and Naprosyn, noting that Plaintiff did not appear to have experienced much improvement (Tr. 254). He reported that Plaintiff's attempts to begin physical therapy had failed due to insurance problems (Tr. 254). Dr. Burton recommended that Plaintiff begin a home program of exercise (Tr. 254). He stated that she should remain off work until her next appointment in five to six weeks (Tr. 254). Notes from a March, 2003 exam indicate that Plaintiff was "getting around much better" (Tr. 252). Finding that Plaintiff experienced degenerative arthritis in both knees, he prescribed a brace for Plaintiff's right knee (Tr. 252).

In March, 2002 Plaintiff complained to Dr. Abuharaz that she experienced numbness in her neck and arms (Tr. 218). The same month, Dr. D.V.Paupuleti, M.D., reported that EMG studies showed a "minimally abnormal study," indicating "[m]edian nerve compromise at the wrist, compatible with Carpal Tunnel Syndrome . . . [which was] [e]arly and mild in severity" (Tr. 247). In August, 2002 Plaintiff told Dr. Abuharaz that she experienced renewed back pain as well as numbness in her arms and hands (Tr. 249). Plaintiff reported that Vioxx gave her temporary relief (Tr. 249).

In February, 2003 Matthew McGee, M.D., examined Plaintiff noting that test results showed mild right Carpal Tunnel Syndrome (Tr. 285). He concluded that Plaintiff's cervical radiculitis was "either caused or significantly contributed to by recurrent rotational forces developed by repetitive cervical activity" (Tr. 285). In closing, he stated that Plaintiff should be permanently restricted from

> "all hand intensive gripping and grasping activities, all lifting performed while twisting the lumbosacral sppine, heavy and repetitive lifting and carrying, as well as repetitive bending, stooping, and squatting. She should avoid repetitive crawling and climbing activities, and prolonged sitting or standing"

(Tr. 286).

### C.  Vocational Expert Testimony

VE Mary Williams classified Plaintiff's previous work as an electrician as skilled with skills specific to the occupation at the medium exertional level (Tr. 100, 314). The ALJ posed the following question to the VE:

> "I'd like you to assume a person who has the work background that you've described in Exhibit 11E [Tr. 100]. Assume that the hypothetical individual was born in 1956 and has a 12th grade education with the additional training Ms. Kelly described today. Assume that the hypothetical individual is limited to lifting, carrying, pushing or pulling a maximum of 10 pounds frequently and 20 pounds occasionally. Assume that the individual is limited to standing and walking in some combination for four of eight hours in an eight-hour workday. The individual can sit for as many as six hours in an eight-hour workday. The individual should be able to wear a knee brace in the workplace. The individual can occasionally climb stairs with railings. Can occasionally bend. The individual cannot crouch, kneel or crawl. The individual cannot climb ladders, ropes or scaffolds. The individual should not be exposed to hazards in the workplace. The individual cannot perform work that requires continuous writing. The individual cannot engage in forceful gripping, grasping, twisting, pinching or squeezing. The individual can perform frequent but not constant handling and fingering. The individual should not be exposed to vibration. The individual should not operate left foot – well, let me say should not operate foot or leg controls. The individual should not drive commercial vehicles. An individual with these limitations could not perform Ms. Kelly's past work as an electrician. Is that right?"

(Tr. 314-315).

The VE answered that given the above limitations, Plaintiff could not perform her past work as an electrician, but could perform work in the light exertional category of an inspector

(6,000 jobs), and sorter (1,500 jobs) (Tr. 315). She stated that in the sedentary category Plaintiff could perform the work of an inspector (1,780 jobs), surveillance system monitor (1,570 jobs) and information clerk (1,780 jobs) (Tr. 316). Upon further questioning from Plaintiff's attorney, the VE stated that if the hypothetical were expanded to restrict Plaintiff from *all* repetitive gripping, grasping, pinching or squeezing, she could perform only the job of surveillance system monitor (Tr. 318). She stated that the job figures represented the region of Michigan's lower peninsula and were consistent with information provided in the Dictionary of Occupational Titles (Tr. 316, 317, 321).

### D.    The ALJ's Decision

ALJ Sobrino held that Plaintiff was not disabled within the meaning of the Social Security Act (Tr. 23). Citing Plaintiff's medical records, she found that Plaintiff suffered from sacroilitis, myofascial pain syndrome, degenerative joint disease of the knees, and mild carpal tunnel syndrome (Tr. 19). The ALJ held that Plaintiff's above impairments were considered severe "as those terms are defined under the applicable regulations," but found nonetheless that they did not meet or equal one of the impairments listed in Appendix 1 of the Regulations (Tr. 19).

The ALJ found that while Plaintiff was unable to perform her past work, she retained the residual functional capacity (RFC) to

> "lift, carry, push and pull 10 pounds frequently and 20 pounds occasionally. She is able to stand/walk 4 hours per 8-hour work day and sit 6 hours per 8-hour work day. [Plaintiff] should have the opportunity to alternate position at will. She cannot kneel, crouch, crawl, or climb ladders, ropes or scaffolds. She can occasionally stoop and occasionally climb stairs with railings. She

>    should be able to wear a knee brace in the work place. [Plaintiff] cannot perform work that exposes her to hazards or vibration. She cannot engage in continuous writing or forceful gripping, grasping, twisting, pinching or squeezing. [Plaintiff] cannot operate foot or leg controls. She should not drive commercial vehicles. She can perform frequent, but not constant, handling and fingering bilaterally. Due to alleged side effects from prescription medication, she is limited to performing simple and routine work"

(Tr. 20-21, 22).

She concluded that although Plaintiff could not perform the full range of light work, she could perform "a significant number of jobs in the regional and national economy" (Tr. 22). She cited the work of inspector, sorter, self-service gas station attendant, surveillance system monitor, and referral and information clerk as examples of jobs that Plaintiff could perform (Tr. 22).

ALJ Sobrino, while acknowledging that Plaintiff's impairments "can reasonably be expected to produce symptoms such as pain," found Plaintiff's allegations of disabling pain inconsistent with medical evidence that "yielded little in the way of objective abnormalities" (Tr. 20). She also cited Plaintiff's daily activities which included walking, driving, grocery shopping, and attending her children's after school activities which she found "not consistent with allegations of disabling pain or other symptoms" (Tr. 20).

## **STANDARD OF REVIEW**

In adopting federal court review of Social Security administrative decisions, Congress limited the scope of review to a determination of whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a

scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). Furthermore, the Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc).

In determining the existence of substantial evidence, it is not the function of this court to try cases de novo, resolve conflicts in the evidence, or decide questions of credibility. *Brainard v. Secretary of Health & Human Services,* 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler,* 745 F.2d 383, 387 (6th Cir. 1984). The substantial evidence standard "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen,* 800 F.2d at 545. If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm. *Studaway v. Secretary of Health and Human Services,* 815 F.2d 1074, 1076 (6th Cir. 1987); *Kirk v. Secretary of Health and Human Services,* 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied,* 461 U.S. 957 (1983).

## **FRAMEWORK FOR DISABILITY DETERMINATIONS**

Plaintiff has the initial burden of establishing entitlement to benefits by proving the

existence of a disability. *Tyra v. Secretary of Health and Human Services,* 896 F.2d 1024, 1028 (6th Cir. 1990). Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A).

The mere existence of an impairment, even a severe one, will not entitle the claimant to disability benefits unless the impairment prevents him from returning to his past work or any other substantial gainful activity existing in the national economy considering his age, education and work experience. 42 U.S.C. §423(d)(2)(A); 20 C.F.R. § 404.1505. A claimant's subjective allegations of disabling symptoms are insufficient by themselves to support a claim for benefits, *Buxton v. Halter,* 246 F.3d 762, 773 (6th Cir. 2001); *Sizemore v. Secretary of Health and Human Services,* 865 F.2d 709, 713 (6th Cir. 1988), and the symptoms must be substantiated by some objective clinical or laboratory findings. *Hurst v. Secretary of Health and Human Services,* 753 F.2d 517, 519 (6th Cir. 1985).

In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) had a severe impairment; 3) had an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to his past relevant work; and 5) if not, whether he can perform other work in the national economy. 20 C.F.R. § 416.920(a). The burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the

claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Abbott v. Sullivan*, 905 F.2d 918, 926 (6th Cir. 1990); *Cole v. Secretary of Health & Human Services,* 820 F.2d 768, 771 (6th Cir.1987); *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984)

## ANALYSIS

### Hypothetical Question

Plaintiff argues that ALJ Sobrino erred by relying on the VE's answer to a hypothetical question that did not include all of her relevant limitations. *Plaintiff's Brief* at 7-10. She states further that the ALJ improperly omitted Dr. McGee's February, 2003 findings which prescribed "avoidance of all hand intensive gripping and grasping activities." *Id.* 9-10. Plaintiff quotes *Varley v. Secretary of Health & Human Services,* 820 F.2d 777, 779 (6th Cir. 1987) which states that, "[s]ubstantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question, but only if the question accurately portrays plaintiff's individual physical and mental impairments." (internal citations omitted).

While Plaintiff cites the commonly used principle that a VE's testimony cannot constitute substantial evidence if the hypothetical question is incomplete, the principle is inapplicable to the present case.

Although Plaintiff places great significance on the ALJ's failure to include "avoidance of all hand intensive gripping and grasping activities" in the hypothetical question, the ALJ's hypothetical question and RFC which prohibit Plaintiff from "forceful gripping, grasping,

-13-

twisting, pinching or squeezing," encompass the limitations stated by Dr. McGee (Tr. 22, 286). The ALJ's question represents a reasonable summation of Dr. McGee's findings, which describe Plaintiff's Carpal Tunnel condition as "low-grade," and "mild" (Tr. 286). A March, 2002 report also described Plaintiff symptoms from Carpal Tunnel Syndrome as "mild" (Tr. 247). Substantial evidence found in Dr. McGee's report and elsewhere in the record would actually have supported a hypothetical question containing less stringent restrictions on Plaintiff's hand and wrist activity than the one composed by the ALJ.

Plaintiff argues further that a properly restrictive hypothetical, including Plaintiff's testimony that medication side effects obliged her to nap frequently, mandate a finding of disability. *Plaintiff's Brief* at 10. However, substantial evidence culled from the record supports the ALJ's credibility determination, based in part upon the lack of objective medical evidence supporting Plaintiff's testimony along with her relatively active lifestyle. Having performed a well supported credibility analysis, the ALJ was not obliged to include all of allegations of pain and limitations that she found unbelievable: "[T]he ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals." *Stanley v. Secretary of Health and Human Services,* 39 F.3d 115,118-119 (6th Cir.1994), *quoting Hardaway v. Secretary of Health & Human Servs.,* 823 F.2d 922, 927-28 (6th Cir.1987).

Dr. Choi's July, 2002 assessment concluded that Plaintiff's medical records did not substantiate her professed level of pain (Tr. 203). Plaintiff's *Daily Activity Form* indicates that she prepared meals, sewed, read the newspaper for approximately an hour sitting in an upright position, and helped her younger child get ready for bed (Tr. 85).

The Court also rejects Plaintiff's argument that the ALJ failed to take into account Dr. McGee's finding of cervical radiculitis. *Plaintiff's Brief* at 10 *citing* Tr. 285. First, the ALJ was not obliged to grant Dr. McGee findings controlling weight. Dr. McGee, a self-professed examining rather than treating physician, compiled a list of "permanent restrictions" on Plaintiff's activities (Tr. 286). However, as noted by the ALJ, substantial evidence, including Plaintiff's own testimony describing a relatively active lifestyle, including driving, socializing, attending sporting events, and ability to care for her personal needs contradicts her allegations of disabling limitations.

Second, as discussed by Defendant, the ALJ actually employed Dr. McGee's proposed restrictions, based on his diagnosis of cervical radiculitis, in the hypothetical question.[1] Although Plaintiff apparently faults the hypothetical question for its omission of the term "cervical radiculitis," the Court in *Webb v. Commissioner of Social Sec.* 368 F.3d 629 (6th Cir. 2004), clarifying an earlier Sixth Circuit holding, held that the ALJ is not required to list all of a claimant's maladies in the hypothetical question. *Id.* at 632, *quoting Varley v. Sec'y of Health and Human Services,* 820 F.2d 777, 779 (6th Cir.1987). *See also Smith v. Halter,* 307 F.3d 377, 379 (6th Cir. 2001), where the court refuted the argument that the ALJ must adhere to talismatic language in hypothetical questions to avoid remand. The court found

---

[1] Dr. McGee stated that appropriate restrictions "would include avoidance of all hand intensive gripping and grasping activities, all lifting performed while twisting the lumbosacral spine, heavy and repetitive lifting and carrying, as well as repetitive bending, stooping, and squatting. She should avoid repetitive crawling and climbing activities, and prolonged sitting or standing" (Tr. 286). The ALJ's RFC actually places *greater* restrictions on Plaintiff's work abilities (Tr. 22).

that a question was sufficient provided that it properly reflected plaintiff's relevant limitations. The ALJ's hypothetical question, which drew in large part upon Dr. McGee's opinion of Plaintiff's limitations, comports with the holding in *Webb*.

Last, Dr. McGee's findings, which place equal or greater restrictions on Plaintiff's activities than her other physicians, did not state at any point in his opinion that Plaintiff was precluded from all gainful employment, reporting only that he believed Plaintiff did "not appear to be a candidate to return to her prior employment" as an electrician where she performed work at the medium exertional level (Tr. 100, 286). The ALJ's decision, which limited Plaintiff to only light and sedentary jobs, does not conflict with Dr. McGee's opinion (Tr. 22).

This Court notes in closing that its conclusion upholding the ALJ's finding of non-disability is not intended to trivialize Plaintiff's legitimate impairments. However, the overriding question in this appeal is whether the ALJ's decision was supported by substantial evidence. Based on a review of this record as a whole, the ALJ's decision is within the "zone of choice" accorded to the fact-finder at the administrative hearing level, *Mullen v. Bowen*, *supra*, and should not be disturbed by this Court.

## **CONCLUSION**

For the reasons stated above, I recommend that Defendant's Motion for Summary Judgment be GRANTED, and that Plaintiff's Motion for Summary Judgment be DENIED.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR

72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                      s/R. Steven Whalen
                                      R. STEVEN WHALEN
                                      UNITED STATES MAGISTRATE JUDGE

Dated:  June 27, 2005

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on June 27, 2005.

                                      s/G.K.Wilson

Judicial Assistant